IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


JIMMY DON COLEMAN,                    §
                                      §
        Petitioner,                   §
                                      §
v.                                    §        2:07-CV-0182
                                      §
RICK THALER, Director,                §
Texas Department of Criminal Justice, §
Correctional Institutions Division,   §
                                      §
        Respondent.                   §


**REPORT AND RECOMMENDATION
TO DENY PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner JIMMY DON COLEMAN has filed with this Court a Petition for Writ of Habeas

Corpus by a Person in State Custody challenging his conviction out of the 100th Judicial District

Court of Collingsworth County, Texas, for the felony offense of intoxication manslaughter.  For the

reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's

application for federal habeas corpus relief should be DENIED.


I.
PROCEDURAL HISTORY

On January 16, 2004, in the 100th Judicial District Court of Collingsworth County, Texas,

petitioner was indicted for the offense of intoxication manslaughter of W.D. Cook, alleged to have

been committed on December 13, 2003.  *State v. Coleman*, Cause No. 2529.  Petitioner pled not

guilty to the charges and, on April 7, 2004, a jury found petitioner guilty of intoxication

manslaughter and sentenced him to twenty (20) years in the Texas Department of Criminal Justice,

Correctional Institutions Division.

Petitioner appealed his conviction and sentence to the Seventh Court of Appeals which affirmed the conviction on September 15, 2005.[1]  *Coleman v. State*, No. 07-04-00237-CR (Tex. App.–Amarillo 2005, pet. ref'd).  Petitioner's petition for discretionary review was refused on February 1, 2006.  *Coleman v. State*, PD-1811-05.

On January 17, 2007, petitioner filed an application for state habeas corpus relief alleging the same grounds he presents in this federal petition.  On August 15, 2007, the Texas Court of Criminal Appeals denied relief without written order.  *Ex parte Coleman*, App. No. WR-67,576-02.[2] On August 29, 2007, petitioner filed this federal petition for habeas relief.  On January 3, 2008, respondent filed its answer.

## II.
## FACTUAL HISTORY

The factual history of this case was set out in the state court of appeals opinion.  With regard to the traffic collision that occurred at approximately 7:30 p.m. on December 12, 2003, on Highway 83 several miles south of Shamrock, Texas, in which petitioner and the victim were involved (R. 4:23-6, 58-9), the court of appeals summarized the evidence presented at trial:

> First, Lena Cook (the decedent's wife who was traveling with the decedent at the time of the collision) testified that she and her husband were in the proper lane of traffic headed north when she saw a pair of headlights coming at them at an angle just prior to being struck and, at this time, the decedent's vehicle was traveling in the proper lane (*i.e.* the northbound lane).  Second, Brandon Colpetzer testified that he was traveling north on the same highway when he topped a hill and observed two vehicles ahead of him; that of appellant was rolling backward and eventually came to

---

[1]  In his direct appeal, petitioner raised the following issues: (1) the evidence is legally and factually insufficient to prove either that petitioner caused the collision or that petitioner was intoxicated at the time of the accident; (2) the blood alcohol test results were inadmissible because the State failed to comply with state law; (3) the trial court erred in failing to instruct the jury on the lesser-included offense of driving while intoxicated; and (4) the trial court erred in refusing to grant a mistrial when a State's witness violated a motion in limine.

[2]  No findings were made by the trial court regarding petitioner's state writ of habeas corpus.

rest in the middle of both the north and southbound lanes. Third, Leslie Flores, who came upon the scene after the collision, testified that one car (that later determined to be appellant's) lay in the middle of the road facing east while the other vehicle (that of the decedent and Mrs. Cook) lay on the right shoulder of the road facing west. Fourth, no debris or fluid from either vehicle was found in the southbound lane; rather, it lay either in the northbound lane or the shoulder of that lane. Fifth, a diagram of the scene illustrated that most if not all of appellant's vehicle came to rest in the northbound lane (though he was traveling south before the accident) while the vehicle of the decedent (who was traveling north in the northbound lane before the collision) came to rest outside of the northbound lane and partially on the shoulder and runoff abutting the shoulder of the northbound lane.

The state appellate court, noting the evidence at trial showed petitioner's blood alcohol level taken at the hospital the evening after the accident was 0.32 grams of alcohol per 100 milliliters of blood (R. 5:7, 52), noted the following additional trial evidence of petitioner's intoxication:

1) appellant's signed statement wherein he admitted to having several drinks at the American Legion and thinking that he would have trouble driving due to fatigue and drinking alcohol on an empty stomach; 2) testimony from witnesses indicating that they smelled alcohol on appellant's breath when he burped; 3) testimony from paramedics indicating they smelled alcohol around appellant or his vehicle; 4) testimony that appellant was uncooperative, resistant to care, and cursing; 5) testimony not only that appellant's vehicle smelled like alcohol but also that seven unopened cans of beer, an empty one gallon jug of wine, and an empty pint bottle of whisky were in it; 6) testimony from Angela Kincanon that she served appellant three drinks prior to the collision and that he fell asleep at the bar; 8) testimony from Richard Wright, commander at the American Legion in Shamrock, that he asked appellant to leave and walked him outside because he had been sleeping at the bar; and 9) evidence that appellant crossed into the lane of oncoming traffic as he drove his car.

*Coleman v. State*, Slip Op. at 2-3, 6-7.

## III.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1.     Petitioner was denied effective assistance of counsel at trial because trial

counsel failed to:

a.      pursue an autopsy, hire an accident reconstruction expert, or obtain medical records of the deceased;

b.      obtain rulings on pretrial motions;

c.      present witnesses or law to support a motion for change of venue; and

d.      present an insanity by voluntary intoxication defense at the punishment phase of the trial;

2.      Petitioner was denied effective assistance of counsel on appeal because appellate counsel:

a.      filed a frivolous brief; and

b.      failed to argue the issues included in the state writ on direct appeal;

3.      The trial court erred by:

a.      failing to grant a motion for change of venue;

b.      allowing the State to present evidence of extraneous bad acts without proper notice; and

c.      allowing the State to present excessive character evidence of the victim;

4.      The State erred by:

a.      not conducting an autopsy on the deceased as required by State law;

b.      introducing character evidence about the victim; and

c.      failing to provide proper notice of intent to offer evidence of extraneous offenses; and

5.      The cumulative effect of these errors violated petitioner's due process rights.

IV.
## EXHAUSTION OF STATE COURT REMEDIES

In his answer, respondent concedes petitioner sufficiently exhausted his available state court remedies as required by 28 U.S.C. § 2254(b), (c). The undersigned Magistrate Judge has reviewed

petitioner's state court records and it appears petitioner has presented, to the highest court of the State of Texas, the substance of the claims he now presents to this federal court. Therefore, it is the opinion of the Magistrate Judge that petitioner has exhausted his available state court remedies, and that this case be decided on the merits.

V.
STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting this presumption of

correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

Petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence alleging the same grounds alleged in this petition. The Court of Criminal Appeals denied petitioner's state habeas application on August 15, 2007 without written order. *Ex parte Coleman*, App. No. WR-67,576-02. The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claim on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999). Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision that petitioner was not denied his constitutional rights was contrary to, or involved an unreasonable application of, clearly established federal law or was an unreasonable determination of the facts in light of the evidence before the state court. After review, it is the opinion and finding of the Court that petitioner has not shown the state court decision involved an unreasonable application of federal law or an unreasonable determination of the facts. Consequently, petitioner is not entitled to federal habeas corpus relief.

VI.
MERITS

A. <u>Ineffective Assistance of Trial Counsel</u>.

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show

counsel's actions "fell below an objective standard of reasonableness." *Id*. at 668, 104 S.Ct. at 2064. However, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Id.* at 697, 104 S.Ct. at 2069.

### 1. Pre-Trial Investigation.

In his first ground, petitioner asserts his attorney was ineffective for not seeking an autopsy to be performed on the deceased and for failing to request the medical records of the deceased (Mr. Cook). Petitioner contends the autopsy and medical records were necessary to determine Mr. Cook's cause of death and whether the cause of death was something other than the car crash. Petitioner, noting the deceased was seventy-four when he died, speculates that perhaps the deceased suffered a brain aneurism, a stroke, or a massive heart attack, which caused him to blackout and then cause the car crash or be a "concurrent" cause of the crash. Petitioner contends counsel's failure to obtain an autopsy and the medical record precluded petitioner from asserting this defense.

Petitioner also contends counsel was ineffective for failing to hire an accident reconstruction expert to determine who, in fact, caused the accident. Petitioner asserts that had his attorney hired an accident reconstruction expert, this may have further shown that Mr. Cook caused the accident. (Brief at 8).

The only two surviving eyewitnesses to the car crash are petitioner and the deceased's wife, Lena Cook. Mrs. Cook's testimony at trial was that Mr. Cook was talking with her in the car and

driving the car immediately before the crash with petitioner's vehicle and that the last thing she remembered was seeing a pair of headlights heading diagonally towards their car on the two-lane highway. (R. 4:24). This testimony was corroborated by testimony from third parties who arrived shortly after the crash and who testified that the point of impact between the two cars was the driver's side of each car. These witnesses also testified that after the crash, petitioner's car was found in the middle of the highway and the Cooks' car was located partially on the right-side of the highway and partially on the right-hand shoulder of the road. (R. 4:38, 50-51, 55-56, 79). Because petitioner did not testify at trial, and in his own statement to the police made no mention of the particulars of the crash (R. 7:State's Ex. #9), there was no controverting evidence regarding the cause of the crash. Further, there is absolutely no evidence in the record that Mr. Cook suffered a "blackout" or any other medical infirmity that caused the crash. Indeed, Mrs. Cook testified that the only medication he took was for kidney problems and that he had experienced some prostate problems in the past that had been addressed successfully. (R. 4:28). Accordingly, without any indication from the record that the victim had any medical problem prior to the crash, there is nothing other than petitioner's speculation that the deceased caused, or contributed to causing, the collision. When counsel's representation is viewed from counsel's perspective at the time, as required under *Strickland*, petitioner has failed to prove deficient performance by counsel. Petitioner has failed to present any evidence which might have led counsel to suspect that there was any "blackout" by Mr. Cook that caused the car crash.

Similarly, as to petitioner's assertion that his attorney should have consulted an accident reconstruction expert and solicited reconstruction testimony, petitioner must show, under *Strickland*, both that the expert testimony would have been favorable and that the witness would have testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v.*

*Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). Petitioner has failed to show there was any testimony available from any such expert which would have been favorable to him. Indeed, given the evidence presented at trial that petitioner's car was found in the middle of the road and the Cooks' car was found on the northbound shoulder, coupled with the evidence of petitioner's severe intoxication, petitioner has failed to allege, much less show, any reasonable probability that there is any expert who would have determined that petitioner did not cause the head-on crash. Defense counsel was not ineffective for failing to follow this investigative trail. The state court's denial of this ground was not contrary to federal law.

## 2. Pre-trial Motions

In his second ground, petitioner contends trial counsel was ineffective for failing to obtain rulings on pretrial motions, thereby allowing evidence regarding petitioner's prior convictions and extraneous offenses to be admitted into evidence by surprise. Petitioner, however, presents no evidentiary basis to support his assertion that his attorney did not obtain rulings on his pretrial motions. A conclusory allegation is insufficient to raise a constitutional issue on habeas review. *Koch v. Puckett*, 907 S.W.2d 524, 530 (5th Cir. 1990). Moreover, the record from the trial reflects defense counsel did obtain rulings on his motion to suppress the blood alcohol test results, motion to suppress the testimony of a state trooper as an accident reconstruction expert, and motion to suppress the written statement, all of which were addressed during a pretrial hearing. (R. 2:36-7, 55, 69). Moreover, during this same hearing, the parties discussed several requests for motions in limine that had been made by defense counsel, and some of this discussion concerned prior out-of-state convictions and a judgment out of the same county where he was tried. (R. 2:64-6). Therefore, contrary to petitioner's assertion, his attorney did seek, and obtain, numerous rulings with regard to pretrial motions and matters. Moreover, the record from the hearing reflects defense

counsel was aware of the prior convictions the State intended to offer into evidence at the punishment phase of the trial. (R. 2:65-6). Thus, no alleged failure on the part of defense counsel to obtain rulings on pretrial motions caused the State to enter any evidence by surprise. Petitioner's conclusory claim that his attorney failed to obtain rulings on pre-trial motions does not entitle him to relief on this claim. The state court's denial of this claim on its merits is not contrary to federal law.

### 3. Change of Venue

In his second ground, petitioner also asserts his attorney was ineffective for failing to present evidence in support of his motion to change venue. In general, petitioner asserts his attorney was ineffective for failing to present witnesses or law to support the need for a change of venue to another county due to bias among the community against petitioner that was shown during the voir dire process.

During voir dire, when the prosecutor asked whether there was anyone who could not keep an open mind until after hearing all of the evidence, one of the jurors stated that he had known petitioner for a long time and, because he knew petitioner's background, it would be tough for him to sit on the jury. (R. 3:34). At that point, the attorneys and the potential juror approached the bench and all further discussion was had there, away from the other jurors. (R. 3:34-5). Defense counsel then stated his intention to file a motion for change of venue because of what was said in front of the other jurors. (R. 3:36-7, 46). The trial court instructed the rest of the panel that they could not consider the statements by the other juror (who was excused) as evidence of guilt or innocence and then asked whether or not there was anyone else who could not be fair or had made up his or her mind. (R. 3:37). Five potential jurors approached the bench at that point, including one who knew the victim and his family, one who had religious objections to sitting as a juror, one

whose daughter had been in a car crash caused by a drunk driver, and two who knew petitioner. (R. 3:38-45). Of the two who knew petitioner, one stated that her family had known his family since she was a little girl and that, while she could disregard this and make her decision based on the evidence, it would be difficult for her to sentence him to a long term. (R. 3:38-9). She was not chosen as a juror. (Tr. 44). The other person who knew petitioner stated he would have trouble being a juror because he had witnessed petitioner drunk and had seen him in several fights with a neighbor. This juror was excused from service. (R. 3:44-45).

Later, the jury panel was questioned about whether any of them knew the victim and his family. Two stated they did, but that this would not prevent them from setting this aside and basing a decision on the evidence heard at trial. (R. 3:47-8). Neither of these two members of the venire sat as jurors. (Tr. 44). Later in the voir dire process, two other members of the venire approached the bench and stated they had heard some information about the case from other sources. Both stated they could put aside what they heard and be fair, but neither served as a juror. (R. 3:57-60; Tr. 44)

Under Texas law, a change of venue may be granted in a criminal case upon the written motion of the defendant, supported by his own and at least two other affidavits from credible persons who are residents of the county, that there exists in that county so great a prejudice against the defendant that he cannot obtain a fair and impartial trial. The trial court shall determine the truth and sufficiency of the affidavits. TEX. CODE CRIM. PROC. ANN. art. 31.03(a) (Vernon 1979). In a criminal trial, it is not necessary that jurors be totally ignorant of the facts and issues involved. Instead, they must be able to set aside any impressions or opinions they may have and render a verdict based upon evidence presented in court. *Murray v. Florida*, 421 U.S. 794, 798-800 (1978); *Irvin v. Dowd*, 366 U.S. 717, 722-3 (1961).

The record reflects only one person made any statement about petitioner during the voir dire process in front of the other potential jurors. This statement was that, because he knew petitioner's background, it would be difficult for him to sit on the jury. Petitioner alleges that, because of this statement, his attorney was ineffective for failing to present affidavits and law in support of the motion for change of venue. Petitioner has not shown, however, that because of this single statement there was so great a prejudice against him that he could not obtain a fair and impartial trial. Accordingly, he has shown no reasonable probability that the trial judge would have granted any motion for change of venue if such had been properly presented. Petitioner has therefore not met his burden under *Strickland* with respect to this claim. The state court's denial of this claim is not contrary to federal law.

### 4. Insanity by Voluntary Intoxication Defense

In his seventh ground, petitioner asserts trial counsel was ineffective for failing to present evidence of insanity by voluntary intoxication at the punishment phase of the trial as mitigating evidence. In particular, petitioner asserts his blood alcohol level of .32 after the crash was so high that he was incapable of knowing right from wrong or of conforming his behavior to the law.

Under Texas law voluntary intoxication does not constitute a defense to the commission of a crime. *See* TEX. PENAL CODE ANN. § 8.04(a) (Vernon 1994). Evidence of temporary insanity caused by intoxication can, however, be introduced by a defendant as mitigation evidence at the punishment phase of the trial. *See* TEX. PENAL CODE ANN. § 8.04(b). However, in order to raise the issue of insanity by voluntary intoxication for purposes of mitigation under state law, the evidence must establish that, as a result of the intoxication, the defendant either did not know that his conduct was wrong or that he was incapable of conforming his conduct to the requirements of

the law.  *Ex parte Martinez*, 195 S.W.3d 713, 722 (Tex. Crim. App. 2006).

Petitioner testified at the punishment phase of the trial.  He testified he made a bad choice in driving that night and of driving while intoxicated, that he had a problem with alcohol and always had, and that he regretted his actions.  (R. 6:42-5, 54).  He also testified that he blacked out from the alcohol and does not recall the wreck.  (R. 6:54-5).  This testimony does not constitute evidence that petitioner either did not know his conduct was wrong in drinking until he was intoxicated and then driving his car, or that he was unable to conform his conduct to the law by not making the choice to drive his car after drinking.  Without any evidence to support his contention that he was temporarily insane due to intoxication, defense counsel was not ineffective for failing to attempt to present this defense.  The state court's denial of this ground is not contrary to federal law.  Petitioner's claims of ineffective assistance of trial counsel are without merit.

## B.  Ineffective Assistance of Appellate Counsel.

In his eight ground, petitioner contends his appellate counsel was ineffective for filing a frivolous appeal and for failing to include, as points of error on appeal, the issues presented in the state brief.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether counsel has been ineffective is determined using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, petitioner must show a reasonable probability that, but for his counsel's deficient representation, he would have prevailed on his appeal.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To be effective, appellate counsel need not raise every non-frivolous issue on appeal.

*United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Petitioner first asserts his appellate attorney argued frivolous issues on appeal and states the appellate court stated the issues were frivolous. This Court has read the appellate opinion and finds no such comment present. Instead, the appeals court addressed all of the eight points of error on their merits and in full. *See Coleman v. State*, No. 07-04-00237-CR. This claim is without merit.

Petitioner also contends appellate counsel was ineffective for failing to raise the issues petitioner raised in his state writ. Petitioner acknowledges, however, that this claim will only have merit if this Court determines constitutional error occurred at his trial, as alleged in his state and federal writs. (Brief at 19). Both this Court and the state habeas court have determined the grounds petitioner raises are without merit. Petitioner's claims of ineffective assistance of appellate counsel are without merit.

## C. Trial Court Error

In his third ground, petitioner contends the trial court erred in denying petitioner's motion for change of venue. In his sixth ground, petitioner asserts the trial court abused its discretion by

allowing the State to introduce evidence of extraneous bad acts committed by petitioner without giving sufficient notice.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Under state law, in deciding whether the trial court abused its discretion in denying a motion to change venue, the reviewing court determines whether there existed such a prejudice in the community that it is doubtful that the defendant received a fair trial by an impartial jury. *Etheridge v. State*, 903 S.W.2d 1, 6 (Tex. Crim. App. 1994). While petitioner contends he could not receive a fair trial due to statements made about him during jury voir dire (see *supra*), the one statement about petitioner made by one member of the venire in front of the jury panel was an ambiguous one. Moreover, the other jurors who knew petitioner, knew about the case, or knew the victim, did not make any statements about this knowledge before the panel and did not serve on the jury. Thus, the record simply does not reflect there existed such a prejudice in the community against petitioner

that it is doubtful he received a fair trial by an impartial jury. Accordingly, petitioner has failed to establish the trial court abused its discretion in denying the motion, much less establishing any perceived error prejudiced him.

As to petitioner's claim that the trial court erred in admitting evidence at punishment of unadjudicated bad acts committed by petitioner without the defense receiving sufficient notice, petitioner appears to be referring to testimony from a state trooper that he stopped petitioner in his car in June of 2001 after there was a report that petitioner almost caused an accident, that he performed sobriety tests on petitioner at the scene, which petitioner failed, and that the trooper arrested petitioner. (R. 6:12-17). Under state law, evidence may be offered at the punishment phase of a criminal trial as to any matter the trial court deems relevant to sentencing including the prior criminal record of the defendant and any evidence of an extraneous crime or bad act that is shown, beyond a reasonable doubt, to have been committed by the defendant. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon 2007). The trial court instructed the jurors in the punishment jury charge that they could not consider any evidence of extraneous crimes or bad acts unless they found beyond a reasonable doubt that petitioner committed the acts. (Tr. 59). The trial court complied with state law in admitting such evidence at the punishment phase of the trial. With regard to whether notice was requested in writing by the defense and provided by the prosecution, the record is silent on this issue. However, even if there was inadequate notice creating trial error in this respect, petitioner testified, at punishment, about his prior convictions and bad acts, including a prior DWI and a prior revoked probation due to drinking and driving. (R. 6:46-54). Given that petitioner testified at trial and was cross-examined about these and/or similar bad acts, petitioner has shown no harm in the trial court permitting evidence of extraneous offenses to be offered at the

punishment phase of the trial, with or without proper notice. The state court's denial of this ground is not contrary to federal law.

## D. State Error

In his fourth ground, petitioner argues the State erred by not conducting an autopsy or inquest on the victim as required by State law. In his fifth ground, petitioner asserts the State erred by introducing character evidence about the victim at trial, even though it was not one of the elements of the offense. Finally, in his sixth ground, petitioner asserts the State failed to provide proper notice of intent to offer evidence of extraneous offenses and prior convictions as required under state law.

### 1. Failure to Conduct an Autopsy

Petitioner asserts the State failed to conduct an inquest or autopsy of the deceased as required under state law. Under 49.04(a)(2) of the Texas Code of Criminal Procedure, a justice of the peace shall conduct an inquest into the death of a person who dies in the county he or she serves if the person dies an unnatural death from a cause other than a legal execution. TEX. CODE CRIM. PROC. ANN. art 49.04(a)(2) (Vernon 1987). An inquest is defined as an investigation into the cause and circumstances of the death of a person and a determination, with or without a formal court hearing, as to whether the death was caused by an unlawful act or omission. TEX. CODE. CRIM. PROC. ANN. art. 49.01(2) (Vernon 1987). Under state law, a justice of the peace may, at his discretion, obtain the opinion of a health officer or physician about the need for an autopsy and then shall either direct a physician to perform the autopsy or certify that no autopsy is necessary. A justice of the peace **shall** order an autopsy performed if he determines that the autopsy is necessary

to confirm the nature and cause of death.  TEX. CODE CRIM. PROC. ANN. art. 49.10(a), (c) & (e) (Vernon 1997).

In the instant case, the justice of the peace did conduct an inquest by responding to the car crash scene.  He determined W.D. Cook died as a result of a car crash and testified to this at trial.  The death certificate completed by the justice of the peace was also admitted into evidence at trial, on which it states Cook died as a result of blunt trauma to the head from an injury he sustained in a car wreck.  (R. 4:83-5; R. 7:State's Ex. #7).  Thus, contrary to petitioner's assertion, an inquest was conducted by the State.

While evidently no autopsy was conducted, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law.  *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  The state court denied this claim on state habeas review, and this Court does not sit in interpretation of state law.  Moreover, state law only requires the justice of the peace request an autopsy if he or she determines that this is necessary to determine the cause of death.  The justice of the peace in this case saw the deceased's body at the scene of the car crash and, by looking at it, determined the victim died from blunt force trauma to the head.  Petitioner has not presented any evidence that an autopsy was necessary for determining the cause of death in this case.  The state court's denial of this claim is not contrary to federal law.

## 2.  Character Evidence

Petitioner further contends the State erred in introducing character evidence of the victim in

order to gain the sympathy of the jurors. (Brief at 14). The record from the trial reflects that, at the punishment phase of the trial, the State presented testimony from the victim's wife, his daughter, and his granddaughter, as well as from a deacon and the minister of his church. Each testified about what a good man he was and what his lost meant to them. (R. 6:7-8, 25-6, 28-36, 39-40). In *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), the United States Supreme Court held the Eighth Amendment does not prohibit the admission of victim impact evidence at the sentencing stage of a capital murder trial, thus overruling its previous case law on this subject. The Court held a state may "legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Id.* at 825. The Supreme Court also stated, however, that the Due Process Clause of the Fourteenth Amendment still prohibits the introduction of evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair." *Id*. at 825. Previously, the Supreme Court had recognized that such evidence is relevant in criminal trials not involving the death penalty. *Booth v. Maryland*, 482 U.S. 496, 504 (1987).

Here, testimony from the victim's family and friends about how his death affected them was thus permissible testimony at petitioner's trial, so long as it was not unduly prejudicial such that it rendered petitioner's trial unfair. Petitioner has not shown the testimony was unduly prejudicial. Each witness testified for a short period of time, testified how each of them knew the victim, and how his death affected them. Petitioner's constitutional rights were not violated because of this testimony. The state court's denial of this claim is not contrary to federal law.

### 3. Notice Regarding Prior Convictions and Extraneous Offenses

In his sixth ground, petitioner asserts the State failed to give the notice required under state

law before it offered evidence of petitioner's prior convictions and extraneous offenses into evidence at the punishment phase of the trial.  As previously noted, under state law, evidence may be offered at the punishment phase of a criminal trial as to any matter the trial court deems relevant to sentencing including the prior criminal record of the defendant and any evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon 2007).   Upon the timely request of the defense, the State shall provide notice of its intent to introduce such evidence.  *See* Art. 37.07 §3(g).  While the clerk's record does not include either a written request from defense counsel for notice nor a written notice being provided, it is clear from the record that defense counsel was aware of the State's intent to offer this evidence.  During the pre-trial hearing, defense counsel stated petitioner's prior offenses and other acts should be entered only at punishment or if petitioner testified at the guilt phase.  (R. 2:65).  The attorneys also discussed prior judgments against petitioner and what level of proof would be required.  (R. 2:66).  Moreover, during the punishment phase of the trial, while defense counsel objected to testimony regarding an extraneous offense, it is clear from the objection itself that he was aware of the offense and was making the objection for the record. (R. 6:15).  Furthermore, defense counsel successfully objected to the admission of two judgments on the basis they indicated petitioner waived his right to an attorney in those cases but that the cases did not include a proper waiver.  After this objection was made, there was conversation between the two attorneys and the trial court that reflects defense counsel was given notice of the State's intent to place these prior convictions into evidence.  (R. 6:23-4).  Thus, the record does not support petitioner's assertion that the State failed to comply with state law and give sufficient notice regarding evidence it intended to present at the punishment phase of the trial.

Moreover, if notice was not given, any such error would be subject to a harmless error analysis. At the federal habeas level, the appropriate harmless error test is set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under this test, error is deemed harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. at 637. As noted earlier, petitioner testified at the punishment phase of the trial and was questioned by the prosecutor about his prior convictions in Texas, Florida, and Georgia, including a prior conviction for DWI, as well as the numerous times his probation was revoked, including the revocation based on his arrest for drinking and driving. The judgments were all admitted into evidence, and petitioner testified that all of his convictions stemmed from his drinking. (R. 6:46-54). Because this information was admitted into evidence at the punishment phase anyway, petitioner has not shown that he was harmed by any alleged lack of notice. Petitioner is not entitled to relief on this claim.

## E.  Cumulative Error

In his final ground, petitioner asserts the cumulative effect of the errors at his trial denied him his due process rights and his right to a fundamentally fair trial. In *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992), the Fifth Circuit held that in order for a federal habeas petitioner to prevail on a claim of cumulative error at a state trial, he must establish: 1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; 2) the errors were not procedurally defaulted for habeas purposes; and 3) the constitutional errors so infected the entire trial that the resulting conviction violates due process. *Id.* at 1458. As this Court has found, the claims raised by petitioner are without merit and therefore do not establish any constitutional errors which infected the trial such that petitioner's conviction and sentence violate his due process rights.

Petitioner's grounds are without merit and should be DENIED.

## VII.
### RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by

petitioner JIMMY DON COLEMAN be DENIED.

## VIII.
### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 20th day of August, 2010.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the
event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is
fourteen (14) days from the date of filing as indicated by the "entered" date directly above the
signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by
electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the
fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See*
28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report
and Recommendation."  Objecting parties shall file the written objections with the United States
District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely

file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).